IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JASON BOATRIGHT, *et al.*,   )
                             )
    Plaintiffs,              )
                             )
        v.                   )   1:13cv91 (JCC/IDD)
                             )
AEGIS DEFENSE SERVICES, LLC, )
                             )
                             )
    Defendant.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Aegis Defense Services LLC's ("Defendant" or "Aegis") Motion to Compel Arbitration and Stay Proceedings or, in the Alternative, to Dismiss Counts I, III, IV, V, and VI of Plaintiffs' Complaint and Strike Plaintiffs' Jury Demand (the "Motion"). [Dkt. 14.] For the following reasons, the Court will grant Defendant's Motion.

**I. Background**

A. <u>Factual Background</u>

This case arises out of employment agreements entered into by employees working for Defendant in providing security services to the United States Embassy in Kabul, Afghanistan. (Compl. [Dkt. 1] ¶¶ 1, 11, 14.)

1

Defendant Aegis is a Delaware corporation headquartered in Arlington, Virginia, which provides security services world-wide for clients including the United States Department of State. (*Id.* ¶¶ 11, 13.)

Plaintiffs Jason Boatright ("Boatright"), Ryan Chapman ("Chapman"), Ann Le ("Le") and Bryan Marshall ("Marshall") (collectively "Plaintiffs") assert claims on behalf each Plaintiff individually and on behalf of a purported class of similarly situated individuals based on allegations that Defendant failed to pay them for all of their hours worked and that it failed to pay them at proper pay rates. (*Id.* ¶¶ 1-2.) The Complaint asserts the following six claims: violation of the Delaware Wage Payment and Collection Act ("DWPCA") (Count I); breach of contract (Count II); quantum meruit (Count III); unjust enrichment (Count IV); breach of the covenant of good faith and fair dealing (Count V); and promissory estoppel (Count VI).

Each of the named Plaintiffs signed a virtually identical employment agreement with Defendant, the International Assignment Employment Agreement v.3.2 (collectively the "Employment Agreements"). (*See* Employment Agreements, Ex. A to Def. Mem. [Dkt. 15-1];[1] Compl. ¶¶ 2, 16.) Each Plaintiff signed

---

[1] As the Employment Agreements are integral to and explicitly relied on in the Complaint, the Court properly may consider their contents without converting this Motion to a motion for summary judgment. *See Wittholn v. Fed. Ins.*

their respective employment agreement and initialed every page. (*See* Employment Agreements.) Plaintiffs acknowledge that the Employment Agreements "govern their employment and compensation" with Defendant. (*See* Compl. ¶¶ 2, 16.) Each agreement states in two separate places that it sets forth the "terms and conditions of [Plaintiff's] employment" with Defendant. (Employment Agreements at 1, 2.)

Each employment agreement contains an identical "Dispute Resolution" provision which requires the waiver of the right to a jury trial as well as the arbitration of all or part of any claims at Defendant's option:

> 13.2 Dispute Resolution. In the event of a dispute involving this Agreement or any aspect of [Plaintiff's] employment or termination thereof ("Dispute"). . . [Plaintiff] and Aegis . . . must attempt to resolve it initially by at least four hours of mediation . . . . If mediation is unsuccessful in resolving the Dispute, the following process applies: If Aegis . . . or [Plaintiff] . . . brings an action in court relating to a Dispute, the plaintiff in such action agrees to waive right to a jury trial and not to request a jury trial. If [Plaintiff] seeks relief from Aegis . . . in court relating to a Dispute, Aegis . . . may at its option within sixty (60) days of service of [Plaintiff's] complaint, require all or part of the dispute to be arbitrated by one arbitrator in Washington, D.C. or Arlington, Virginia, administered by the AAA, JAMS Inc., or other bona fide provider of arbitration services in accordance with the Employment Arbitration Rules of the AAA then in effect . . . . The option to arbitrate any dispute is governed by the Federal

---

*Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

>           Arbitration Act, and fully enforceable . . . The
>           arbitrator's decision will be final, binding, and
>           enforceable . . . .

(Employment Agreements § 13.2.)

Each employment agreement also contains identical provisions stating that Delaware law governs the interpretation of the agreements and indicating that each agreement contains the full understanding between the parties. (Employment Agreements, §§ 15.3, 15.7.)

Boatright executed his Employment Agreement on April 23, 2012. (*See* Boatright Employment Agreement at 15.) Chapman executed his Employment Agreement on April 24, 2012. (*See* Chapman Employment Agreement at 15.) Le executed her Employment Agreement on May 11, 2012. (*See* Le Employment Agreement at 15.) Marshall executed his Employment Agreement on May 16, 2012. (*See* Marshall Employment Agreement at 15.)

After Plaintiffs filed their complaint, Defendant's counsel notified Plaintiffs' counsel on February 15, 2013 that Defendant had elected to exercise its option under the Employment Agreements to arbitrate Plaintiffs' individual claims and asked for Plaintiffs to consent to a stipulation compelling arbitration and staying (or dismissing without prejudice) this action. (Barmak Decl., Ex. 1 to Def. Mem [Dkt. 15-1] ¶ 3.) The parties' counsel conferred via telephone on February 22, 2013, but did not reach an agreement on such a stipulation. (*Id.* ¶

4.) On Thursday, February 28, 2013, Defendant filed separate demands for arbitration with the American Arbitration Association pursuant to each Plaintiff's Employment Agreement, submitting each Plaintiff's individual claims to arbitration. (*Id.* ¶ 5.) When Defendant's counsel notified Plaintiffs' counsel of Defendant's intent to file the instant motion, Plaintiffs' counsel indicated that Plaintiffs would oppose it. (*Id.* ¶ 6.)

      B.    <u>Procedural Background</u>

Plaintiffs filed their Complaint in this Court on January 1, 2013. [Dkt. 1] Defendant filed the instant motion on March 4, 2013. [Dkt. 14.] Plaintiffs filed their opposition on March 18, 2013 [Dkt. 18], and Defendant replied on March 25, 2013 [Dkt. 21].

Defendant's Motion is now before the Court.

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true and must construe

factual allegations in favor of the plaintiff.  *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citation omitted).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal

conclusion couched as a factual allegation." *Iqbal*, 129 S.Ct. at 1949-50.

### III. Analysis

Defendant argues that, based on the Employment Agreements and pursuant to the Federal Arbitration Act ("FAA"), it is entitled to have Plaintiffs' individual claims arbitrated and this litigation stayed. In addition, Defendant argues that if this Court does not find that arbitration should be compelled, then the Court should dismiss Counts I, III, IV, V, and VI of Plaintiffs' Complaint for failure to state a claim. In opposition, Plaintiffs contend that this Court should not compel arbitration because the arbitration agreement here is unenforceable for two reasons: (1) it lacks consideration and (2) it is unconscionable. Even if the Court does compel arbitration on Plaintiffs' individual claims, Plaintiffs assert that this Court must either retain jurisdiction over Plaintiffs' class claims or sent those claims to arbitration. Finally, Plaintiffs argue that their claims should not be dismissed on the merits.

The FAA, 9 U.S.C. §§ 1-15, was intended to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Power Sys. & Controls, Inc. v. Schneider Electric USA, Inc.*, No. 3:10CV137, 2010 WL 2384537, at *1 (E.D. Va. June 9, 2010)

(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). The FAA reflects a liberal national policy favoring arbitration agreements. *Koridze v. Fannie Mae Corp.*, 593 F. Supp. 2d 863 (E.D. Va. 2009) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

The FAA provides that in a suit brought in any of the courts of the United States:

> upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3. If there is a failure or refusal to arbitrate under a written agreement, an aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

In the Fourth Circuit, a court must compel arbitration and stay the litigation if the moving party can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the

defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). The FAA's stay of litigation provision is "mandatory" and a district court has "no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* at 500.

Plaintiffs only contest the second element, arguing that the arbitration provisions here are unenforceable under Delaware law[2] because they lack consideration and are unconscionable. A party may seek to revoke an arbitration agreement by challenging the underlying contractual formation as Section 2 of the FAA permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the

---

[2] The Court agrees with both parties' contention, in their papers and in the March 29, 2013 hearing, that Delaware law applies here based on the choice of law clause in the Employments Agreements. (*See* Compl. ¶ 17; Def. Mem. at 9; Pl. Opp. at 3.) As a federal court exercising diversity jurisdiction, the Court must apply the choice of law rules of the forum state, *i.e.*, Virginia. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The Employment Agreements contain a choice of law clause which provides that the "agreement[s] shall be interpreted under the law of Delaware, where Aegis LLC is incorporated, without regard to principles of conflict of law." (Employment Agreements § 15.3.) Virginia law favors contractual choice of law clauses, giving them full effect except in unusual circumstances, *Tate v. Hain*, 181 Va. 402, 410 (Va. 1943), none of which are present here. Delaware law therefore governs here.

fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (citation omitted).

First, the Court rejects Plaintiffs' argument that the arbitration provisions here are unenforceable because they lack consideration. Plaintiffs assert that to be enforceable, an arbitration clause must be supported by independent consideration. The Court concludes, however, that Delaware law does not require an arbitration provision to be supported by independent consideration where, as here, the underlying employment agreement as a whole is supported by adequate consideration. The parties have only identified one case which addressed this specific issue under Delaware law, *Pick v. Discover Fin. Services, Inc.*, CIV. A. 00-935-SLR, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001). In *Pick*, the court held that "mutuality [of consideration] is not a requirement of a valid arbitration clause, provided that the underlying contract is supported by consideration." *Id.* Contrary to Plaintiffs' assertion, the court in *Pick* made clear that it was applying Delaware law in analyzing the enforceability of the arbitration clause at issue. *Id.* at *4-5. Although in reaching its conclusion, the *Pick* court cited to *Harris v. Green Tree Financial Corporation,* 183 F.3d 173, 180 (3d Cir. 1999), which applied Pennsylvania law, the *Pick* court most likely did so for

the proposition that its conclusion was in line with the majority position of federal and state courts which had considered the issue. *See Harris*, 183 F.3d at 180-181 (collecting federal and state cases across jurisdictions in support of the position that "[e]ach promise need not be supported by separate consideration" where there was adequate consideration for the contract as a whole). Similarly, in *Dan Ryan Builders, Inc. v. Nelson*, the West Virginia Supreme Court "conclude[d] that the formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause," under West Virginia law after surveying treatises, journals, and cases from other jurisdictions and finding that "the majority of courts conclude that the parties need not have separate consideration for the arbitration clause, or equivalent, reciprocal duties to arbitrate, so long as the underlying contract as a whole is supported by valuable consideration." 737 S.E. 2d 550, 557-58 & n.10 (W. Va. 2012) (collecting cases). The *Pick* court's reference to non-Delaware precedent summarizing the majority rule on this issue, therefore, does not undermine that fact that the court ultimately reached its conclusion as a matter of *Delaware* law. Based on *Pick*, the Court therefore finds that the arbitration provisions here will not fail for lack of consideration provided that the Employment Agreements as a whole

had adequate consideration.[3]  The Court also concludes that the Employment Agreements as a whole are supported by adequate consideration, including Plaintiffs' promises to perform work in exchange for Defendant's promise to pay them for that work. (*See* Employment Agreements.)

Second, the Court rejects Plaintiffs' arguments that the arbitration provisions here are unenforceable because they are substantively unconscionable due to (a) their unfair, one-sided structure and (b) their confidentiality requirement for the arbitration.  Under Delaware law, a contract is unconscionable if there is "an absence of meaningful choice and [if the] contract terms [are] unreasonably favorable to one of the parties," that is, there is procedural unconscionability or substantive unconscionability. *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978).  For substantive unconscionability, the contract "terms must be 'so one-sided as to be oppressive.'" *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. 19209, 2002 WL 1558382, at *11 & n.46 (Del. Ch. July 9, 2002).

---

[3] The other cases on which Plaintiffs rely are not to the contrary.  Some are cases applying other states' law and accordingly are irrelevant to the consideration of Delaware law. *See e.g. Noohi v. Toll Bros., Inc.*, 2013 WL 680690, *1 (4th Cir. Feb. 26, 2013) (applying Maryland law).  Others stand only for the proposition that arbitration clauses may be separated from unenforceable contracts in which they are embedded and survive scrutiny when the underlying contract does not, but not the proposition that an arbitration clause therefore always must be analyzed as an independent agreement. *See Prima Paint Corp. v. Flood & Conklin Mfg Co.*, 388 U.S. 395 (1967).

To begin, the Court concludes that the structure of the arbitration agreement here is not so one-sided as to be oppressive and therefore does not meet the showing for substantive unconscionability. The provision here allows only Defendant to decide to require claims brought by an employee to be arbitrated. (*See* Employment Agreements § 13.2 ("If Employee seeks relief from Aegis LLC in court relating to a Dispute, Aegis LLC may at its option . . . require all or part of the dispute to be arbitrated . . . .").) However, overall, the Court finds that "it cannot be said that the substance of the arbitration agreements, common to many other enforceable arbitration contracts, shocks the conscience or that an honest and sensible man would not accept them." *Gonzalez v. Citigroup*, CIV.09-017-SLR, 2009 WL 2340678, at *2 (D. Del. July 30, 2009) (finding arbitration clause which required only a defendant's employees submit their claims to binding arbitration to not be substantively unenforceable). In this case, the arbitration provision in the Employment Agreements subjects both parties to the same rules during arbitration (the American Arbitration Association ("AAA") rules) and binds both parties equally to the arbitrator's decision afterwards. *Compare Gonzalez*, 2009 WL 2340678, at *2 and *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912-13 (finding "no inherent unfairness in the [arbitration] clause" "since both parties are bound by the

result," and therefore that the clause was not substantively unconscionable; contrasting clause with "unfairly structured" clause in *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E. 2d 1061, 1063 (Ohio 1984)) *with Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E. 2d 1061, 1063 (Ohio 1984) (involving arbitration agreement which unequally bound the parties to the results of the arbitration) and *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938-39 (4th Cir. 1999) (finding arbitration provision to be "egregiously unfair" because employer's rules were "so one-sided that their only possible purpose is to undermine the neutrality of the proceeding," including that different rules and procedures applied to the different parties during arbitration, that the employer would create the list of arbitrators from which the employee would select, and that the only the employer could expand the scope of the arbitration). Accordingly, the Court concludes that the structure of the arbitration provision here is not substantively unconscionable.

In addition, the Court concludes that the confidentiality requirement in the arbitration provision here does not result in substantive unconscionability. The provision sets out that any arbitration will be governed by the AAA rules and that "the arbitrator will treat as confidential, during the proceedings and in the decision, all evidence and other information presented." (Employment Agreements § 13.2.) The

14

provision's confidentiality requirement is essentially the same as the default confidentiality requirement in the AAA rules that the "arbitrator shall maintain the confidentiality of the arbitration." (AAA Rules, Ex. 1 to Def. Reply [Dkt. 21-1] § 23.) Neither party has identified any cases applying Delaware law which hold that a confidentiality requirement is unconscionable. As it only binds the *arbitrator*, the confidentiality requirement here would still allow Plaintiffs or other potential class plaintiffs from investigating claims, engaging in discovery, and discussing their investigation, discovery, and arbitration outcomes with one another. In the absence of Delaware precedent, in light of the existence of a similar, default confidentiality requirement in the standard AAA rules, and because the Court concludes that the requirement will not impede or burden Plaintiffs or future claimants such that they cannot pursue and obtain relief, the Court finds that the confidentiality requirement here is not unconscionable.

The Court therefore concludes that the arbitration provision is valid and enforceable. In addition, the Court finds that the arbitration provision covers the disputes at issue in Plaintiffs' claims as all counts in the Complaint involve disputes over the Employment Agreements and aspects of Plaintiffs' employment with Defendant. The Employment Agreements state that Defendant "may at its option . . . require

all or part" of a dispute involving the Employment Agreements "or any aspect of [Plaintiffs'] employment" with Defendant to be arbitrated. (Employment Agreements §13.2.) Indeed, Plaintiffs do not contest this issue. Accordingly, Defendant has met its burden to compel arbitration of Plaintiffs' individual claims. The Court therefore will stay litigation of these claims and order that Plaintiffs must arbitrate them according to the Employment Agreements' arbitration provisions.

Finally, the Court must resolve what to do with Plaintiffs' class claims in light of its decision to compel arbitration of Plaintiffs' individual claims: should it compel arbitration of the class claims and if not, should it dismiss the claims, stay the claims, or allow the litigation process to proceed on them?

First, the Court concludes that it should not compel arbitration of Plaintiffs' class claims. As an initial matter, the Court notes that it is contested whether the parties agreed in the arbitration provision to authorize class arbitration at all. However, regardless of whether or not class arbitration is authorized under the provision here, Defendant argues that it has exercised its right to opt to arbitrate only Plaintiffs' individual claims and not their purported class claims. The Employment Agreements provided that Defendant "may at its option . . . require *all or part of the dispute* to be arbitrated."

16

(*Id.* (emphasis added).) Arbitration "is a matter of consent, not coercion." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, the Supreme Court has made clear that the FAA "does not require parties to arbitrate when they have not agreed to do so" as the Act "does not mandate the arbitration of all claims," "nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *Volt*, 489 U.S. at 478. As a result, the Court concludes that Defendant properly has exercised its contractual right to arbitrate only Plaintiffs' individual claims. In light of Defendant's rightful decision to arbitrate only part of the dispute here, the question of whether the arbitration provision otherwise would allow class arbitration is irrelevant.

In addition, contrary to Plaintiffs' assertions, the Court finds that the arbitration of only the individual claims does not violate public policy as embodied in the National Labor Relations Act ("NLRA"). The NLRA does not apply here because the Plaintiffs worked for Defendant outside of the United States at the United States Embassy in Kabul, Afghanistan. Courts have found that the NLRA does not have extraterritorial application. *See Asplundh Tree Expert Co. v. N.L.R.B.*, 365 F.3d 168, 180 (3d Cir. 2004); *Computer Sciences Raytheon*, 318 N.L.R.B. 966 (1995) (finding that the NLRA does not apply to U.S. employees working

17

at U.S. military bases abroad). Moreover, United States embassies are not U.S. territories. *See Souryal v. Torres Advanced Enterprise Solutions, LLC*, 847 F. Supp. 2d 835, 840 (E.D. Va. 2012). As a result, the NLRA is inapplicable in this case.

Second, because the Court has decided to compel arbitration of only Plaintiffs' individual claims, the Court concludes that Plaintiffs' class claims must be dismissed as moot. Plaintiffs cannot continue to pursue in this Court the claims alleged on behalf of the purported class if their individual claims must proceed in arbitration. Only upon the grant of class certification does "the class of unnamed persons described in the certification acquire[] a legal status separate from the interest asserted by the named plaintiff." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). When the claims of named plaintiffs become no longer justiciable before class certification, the purported class action must be dismissed as moot. *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 974-75 (3d Cir. 1992). There has been no class certification of the purported class here. Given the Court's decision to compel arbitration of Plaintiffs' individual claims, the Court therefore will dismiss their class claims as moot.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion. Accordingly, the Court will stay this case, compel arbitration of Plaintiffs' individual claims in the Complaint, and dismiss the class claims as moot.

An appropriate Order will issue.

                                            /s/
April 3, 2013                    James C. Cacheris
Alexandria, Virginia    UNITED STATES DISTRICT COURT JUDGE